James L. CONNOR, Respondent,

v.

James F. RALLS, Jr., Jack W.R. Headley, Dona R. Boley, Stacey Daniels, and Emmanuel Cleaver, II, as members of Board of Police Commissioners of Kansas City, Appellants.

No. WD 52602.

Missouri Court of Appeals,
Western District.

Jan. 14, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 1997.

Dale Close, Kansas City, for appellants.

Michael Waldeck, Kansas City, for respondent.

SPINDEN, Judge.

The Kansas City Police Department (KCPD) refused to give police captain, James Connor, a disability pension briefly before he was scheduled to retire because KCPD's physician concluded that he was not totally incapacitated and because Connor was performing his duties. Connor sued members of

the Board of Police Commissioners of Kansas City, James F. Ralls, Jr., Jack W.R. Headley, Dona R. Boley, Stacey Daniels, and Emmanuel Cleaver, II, for an injunction ordering the commissioners to give him a disability pension. The circuit court issued a temporary restraining order enjoining the commissioners from retiring Connor pursuant to mandatory retirement procedures and requiring KCPD's medical board to examine Connor. When the medical board agreed that Connor was not totally incapacitated, he pursued his lawsuit, and the circuit court, after an evidentiary hearing, ordered the commissioners to retire Connor on disability status.

The commissioners appeal. They challenge the circuit court's conclusion that Connor was entitled to a disability retirement, and they claim that they were not a proper party in the underlying action. We reverse. We find several errors, but the dispositive one is the circuit court's misinterpretation of Chapter 86.

This dispute arose when Connor decided to pursue a disability pension only three months before he reached the end of 30 years of service to KCPD. Section 86.433 [1] required that Connor retire on January 18, 1996, unless he obtained the commissioners' permission to remain on the force. Both a disability pension and retirement under § 86.433 would have generated the same amount of benefits to Connor (60 percent of his highest two years' of salary), but the disability pension would not have been subject to taxation.

Connor was a captain in September 1995 when he decided to pursue the disability pension. He based his request for disability retirement on problems with his back beginning with a fall on an icy step in 1987 while he was on duty. Surgery corrected those injuries but did not eliminate continuing discomfort in Connor's back. Although he reinjured his back in September 1993 when he helped other officers subdue a man who apparently was hallucinating, he did not seek any further treatment for his back until January 1994 and did not miss any work days because of the injury until February 1994. He did not inform KCPD of his reinjury. His physician, W. Joseph Ketcherside, a

board-certified neurosurgeon, did not recommend to Connor that he restrict any of his activities because of the reinjury. He continued working as a police captain. Between 1993 and October 1995, Connor was absent from work three days for sickness and six days for injuries. We find nothing in the record indicating that Connor did not perform his duties adequately. During that period, he "worked out" in a gymnasium to keep his back "limber," and he purchased and began riding a motorcycle in September 1995.

█ He based his request for a disability pension on Ketcherside's opinion that he suffered *focal stenosis,* a permanent disability of the lower back. In September 1995, Ketcherside told Connor that he should not lift more than 50 pounds, run, or become involved in scuffles. Ketcherside believed, however, that Connor was able "to do desk work."

Connor believed that if he informed his supervisors of Ketcherside's opinion he would be reassigned to a "desk job." He did not want to end his career sitting at a desk, he said, so he waited until October 1995 to inform the personnel unit of Ketcherside's opinion.

After learning of Ketcherside's opinion, KCPD, as Connor had anticipated, reassigned Connor to a limited duty job in the detention unit and referred him to KCPD's physician, Craig Lofgreen, for an examination. Lofgreen acknowledged that Connor had spinal *stenosis* but concluded that Connor was not eligible for a disability pension. For Connor to have been eligible for disability pension under § 86.450, Lofgreen would have had to find that Connor was "totally and permanently incapacitated for duty." Connor not only had performed his duties as a captain through October 1995, he was performing his limited duty job in the detention unit without difficulty. On January 8, 1996, he was placed back on full duty.

The circuit court ordered the medical board to examine Connor. A member of the board, Francina Hoffman, a family practice

---

1. All citations to statutes refer to the 1994 Missouri Revised Statutes.

physician, concluded that Connor was not totally and permanently incapacitated. Although she later said that she agreed with all of Ketcherside's opinions, she also indicated that she believed that Connor could still perform the duties of a police captain.

■ What Connor—and, for that matter, the circuit court—apparently failed to understand was that a police officer's being unable to perform the full and unrestricted duties of an officer on the street does not render him or her eligible for a disability pension. It might make the officer disabled in the sense that he or she cannot do the full range of duties required of a regular officer, but § 86.450 requires total and permanent incapacitation, not disability.

We defined total incapacitation in the context of § 86.450 in another case involving a Kansas City police officer as "the inability to return to *any* reasonable or normal employment." *State ex rel. Valentine v. Board of Police Commissioners of Kansas City,* 813 S.W.2d 955, 958 (Mo.App.1991)(emphasis added). Not only was Connor able to work in some reasonable or normal police officer's job, he was doing such a job for the KCPD when the physicians rendered their opinions. None of the physicians who examined Connor—including Ketcherside—found him to be totally and permanently incapacitated.

The circuit court did not explain in its order the basis for its permanently enjoining the commissioners from retiring Connor "pursuant to the normal mandatory retirement procedures as non-disabled," and ordering them to "retire ... Connor ... on disabled status[.]" The record simply does not support the circuit court's ruling. We find nothing suggesting that Connor suffered a total and permanent incapacitation as required by § 86.450.

Because we reach this conclusion, we need not address the other errors evident in this case. We reverse the circuit court's judgment.

SMART, P.J., and ELLIS, J., concur.